UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- X
                                    :
EMIRATES TRADING AGENCY LLC,        :
                                    :
                    Plaintiff,      :
          v.                        :    09 Civ. 676 (BSJ)
                                    :    **Order**
GRAND MIRSINIDI INC.,               :
                                    :
                    Defendants.     :
                                    :
-----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/15/09

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Before the Court is the motion of non-party Monarch I
Maritime S.A. ("Monarch") to vacate the attachment of
approximately $2.5 million of Monarch's funds that have been
attached pursuant to the January 26, 2009 Ex-Parte Order of
Attachment and Garnishment issued against Defendant, Grand
Mirsinidi Inc. ("Defendant" or "Grand Mirsinidi").  For the
reasons set forth below, the Court agrees that Monarch's funds
should be released.

                            **BACKGROUND**

     Pursuant to a time charter party dated July 5, 2007,
Plaintiff Emirates Trading Agency LLC ("Plaintiff" or
"Emirates") chartered the vessel M/V Grand Mirsinidi ("the
Vessel") from Defendant Grand Mirsinidi.  (Compl. ¶ 4.)  Under
the terms of the charter party, Defendant agreed to maintain the
Vessel "right ship" approved for the duration of the charter

                                 1

party.  (Compl. ¶ 5.)  Plaintiff asserts that Defendant did not

so maintain the Vessel, causing Plaintiff to sustain damages.

(Compl. ¶¶ 11-12.)  As a result, on January 23, 2009, Plaintiff

commenced the instant action, seeking an ex parte order of

attachment against Defendant in the total sum of $9,272,008.10.

On January 26, 2009, the Court issued the order of attachment,

which specified, in relevant part, that:

> [T]he Clerk of the Court shall issue Process of Maritime
> Attachment and Garnishment against all tangible or
> intangible property, credits, letters of credit, bills of
> lading, effects, debts and monies, electronic funds
> transfers, freights, sub-freights, charter hire, sub-
> charter hire or any other funds or property . . . belonging
> to, due or being transferred to, from or for the benefit of
> Defendant . . . .

(Order of Attachment of January 26, 2009 at 1-2.)  In response

to this Order, on or about May 21, 2009, garnishee HSBC Bank

attached $2,405,196.49 of funds en route from non-party Noble

Chartering Inc. ("Noble") to Monarch.  (Pl.'s Letter Dated June

1, 2009 at 1.)  Although these restrained funds were not being

transferred to or from the Defendant, they were nonetheless

restrained because the payment details on the wire transfer

contained the words "MV GRAND MIRSINIDI," the name of the vessel

underlying the dispute between Plaintiff and Defendant in this

action.  (See Pl.'s Letter Dated June 1, 2009 at 1.)

Monarch represents that the attached funds must be released

because Defendant has no property interest in them.  Monarch

2

asserts that on March 11, 2009, Defendant Grand Mirsinidi
bareboat chartered the Vessel, the "Grand Mirsinidi," to
Monarch; Monarch, in turn, chartered the Vessel to Noble on
March 27, 2009.   (Monarch's Letter Dated May 26, 2009 at 2.)
The funds attached were to be a freight payment from Noble to
Monarch pursuant to the Noble/Monarch charter party — an
agreement to which Defendant Grand Mirsinidi is not a party.
(Monarch's Letter Dated May 26, 2009 at 2.)

**LEGAL STANDARD**

Supplemental Admiralty Rule E(4)(f) provides, in relevant
part, that "[w]henever property is arrested or attached, any
person claiming an interest in it shall be entitled to a prompt
hearing at which the plaintiff shall be required to show why the
arrest or attachment should not be vacated or other relief
granted consistent with these rules."  Fed. R. Civ. P. Supp. R.
(E)(4)(f).  At a Rule E(4)(f) hearing, the burden is on the
Plaintiff to demonstrate that the attachment should be
maintained.  Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,
460 F.3d 434, 445 n.5 (2d Cir. 2006).  To meet this burden, a
plaintiff must demonstrate that: (1) it has a valid prima facie
admiralty claim against the defendant; (2) the defendant cannot
be found within the district; (3) the defendant's property may
be found within the district; and (4) there is no statutory or
maritime law bar to the attachment.  Aqua Stoli, 460 F.3d at

445.  In this case, the issue before the Court is whether
Defendant Grand Mirsinidi has a property interest in the
restrained funds within the scope of the January 6, 2009 ex
parte order of attachment.

### DISCUSSION

Plaintiff argues that the instant attachment should be
maintained because Defendant has a property interest in the
attached funds as a "sub-freight" or a "Bill of Lading freight"
on which Defendant has a maritime lien.  Plaintiff asserts that
this lien arises out of the "liens clause" of the March 11, 2009
Monarch/Grand Mirsinidi charter party, which provides that
"[t]he Owners . . . have a lien upon all cargoes and sub-
freights belonging to the Charterers and any Bill of Lading
freight for all claims under this Charter, and the Charterers to
have a lien on the Vessel for all moneys paid in advance and not
earned."  (Pl.'s Letter Dated June 1, 2009, Ex. 3, ¶ 16.)  The
Court disagrees.

It is well established that "[t]o secure payments of
freight due from a charterer of its ship, a shipowner may
create, by express provision in the charter party, a lien on the
subfreights earned by the vessel." Cornish Shipping Ltd. v.
Int'l Nederlanden Bank N.V., 53 F.3d 499, 502 (2d Cir. 1995).
"Subfreights are amounts that third-party payors — whether
subcharterers, shippers, or consignees . . . — contract to pay

4

to the charterer for the use of the ship or the transport of goods." Id. Should the charterer default "on its payment of freight or its other obligations under the charter party, the shipowner may exercise its lien on the subfreights by giving notice" to the third-party payor. Id. Until such notice is given, the lien is "essentially inchoate," and the lien is "altogether extinguished" if the third-party payor "pays the subfreights to the charterer or its agent in good faith prior to receiving notice of the lien." Id.

In this case, Defendant Grand Mirsinidi is the shipowner, Monarch is the charterer, and Noble is the third-party payor. Monarch concedes, and the Court agrees, that the "lien clause" of the March 11, 2009 charter party between Monarch and Defendant Grand Mirsinidi provides Grand Mirsinidi with a contractual lien on sub-freights to be paid to Monarch. (See Monarch's Letter Dated June 2, 2009 at 3.) That the charter party provides for such a lien, however, does not necessarily mean that Grand Mirsinidi has an attachable property interest in the restrained funds.

As an initial matter, the "lien clause" of the Monarch/Grand Mirsinidi charter party provides only that the owner of the vessel (Grand Mirsinidi) has a lien "upon all cargoes and sub-freights belonging to the Charterers and any Bill of Lading freight for all claims under this Charter."

(Pl.'s Letter Dated June 1, 2009, Ex. 3, ¶ 16.)  Thus, based on
the language of the clause, it appears to the Court that Grand
Mirsinidi does not have the right to exercise any lien until
there is a breach of the charter party, and the Court has
received no indication that there has been any such breach.
(See Germanakou Decl. ¶¶ 4-8; Kourpouzis Decl. ¶¶ 3-7.)
Additionally, even if Defendant does have the right to exercise
the contractual lien, the law is clear that in order to do so
Defendant must give notice to the third-party payor; until
Defendant does, the lien remains inchoate.  See Cornish Shipping
Ltd., 53 F.3d at 502.  In this case, the evidence presented to
the Court indicates that Defendant has not provided Monarch or
Noble with notice that it intends to exercise such a lien.  (See
Germanakou Decl. ¶¶ 4-8, June 2, 2009; Kourpouzis Decl. ¶¶ 3-7,
June 2, 2009.)  Accordingly, Monarch's contractual lien remains
inchoate.  Furthermore, because a lien is "altogether
extinguished" once a third-party payor "pays the subfreights to
the charterer or its agent in good faith prior to receiving
notice of the lien," any lien Defendant could have had against
the funds at issue has been extinguished by Defendant's failure
to notify Noble of the lien before payment.[1]  Cornish Shipping
Ltd., 53 F.3d at 502.

---

[1] That Monarch did not actually receive the funds at issue (due to the
restraint) is irrelevant.  See Dominion Bulk Int'l, S.A. v. Naviera
Panoceanica, S.A.C., No. 06 Civ. 6854, 2008 U.S. Dist. LEXIS 52707 (S.D.N.Y.

Plaintiff asserts that Defendant need not actually exercise any lien against Monarch in order for the Court to find a property interest in the attached funds.  In support of this proposition, Plaintiff cites to Am. Steel Barge Co. v. Chesapeake & O. Coal Agency Co., 115 F. 669 (1st Cir. 1902), in which the First Circuit stated that "on the broad rules of the admiralty, the owner of the vessel had a lien on this freight, which accrued as of the date of the charter, he stood, in the eyes of the admiralty, which requires no formal instrument, with all the rights of an assignee under a deed of assignment." Id. at 673.  This statement, however, stands in opposition to the Second Circuit's position — a position binding on this Court — that a lien remains inchoate until a shipowner gives notice of his intent to exercise the lien.  See Cornish Shipping Ltd., 53 F.3d at 502.  Accordingly, the Court finds Plaintiff's argument that the lien clause of the Monarch/Grand Mirsinidi charter party alone renders the funds at issue attachable to be without merit.

Although not discussed in Plaintiff's submitted papers, at oral argument Plaintiff raised two additional theories in support of its contention that Defendant has a property interest in the attached funds: (1) that the funds are attachable as a

---

July 8, 2008) (holding that a lien is extinguished once the consignee pays the subfreights to the charterer in good faith prior to receiving notice of the lien, even if the paid funds are then restrained and do not reach the charterer).

debt owed by Monarch to Grand Mirsinidi, and (2) that Monarch is
the alter ego of Defendant.  The Court finds both of these
arguments to be without merit.

Plaintiff bases its argument that the funds at issue are
attachable as a debt owed by Monarch to Grand Mirsinidi on two
distinct facts: (1) that the Monarch/Grand Mirsinidi charter
party provides that payment is to be made "upon receipt of each
freight," and (2) that the attached payment made by Noble to
Monarch was a freight payment.  Thus, according to Plaintiff,
Noble's freight payment to Monarch rendered due a payment from
Monarch to Grand Mirsinidi.  Plaintiff's argument, however,
amounts to mere speculation.  Aside from Plaintiff's own
interpretation of the Monarch/Grand Mirsinidi charter party,
Plaintiff has provided no evidence that any debt is or was owed
by Monarch to Grand Mirsinidi.  Indeed, both representatives of
Monarch and Grand Mirsinidi have submitted affidavits confirming
that Monarch does not currently and did not at the time of
attachment owe any debt to Grand Mirsinidi.[2]  (Germanakou Aff. ¶
4, June 9, 2009; Karpouzis Aff. ¶ 5, June 9, 2009.)
Additionally, even if a debt were owed to Grand Mirsinidi,
Plaintiff has failed to cite any authority to support its
proposition that it may attach any property belonging to an

---

[2] That Plaintiff has failed to provide the Court with any estimate of the
amount of the debt it believes Monarch owes to Grand Mirsinidi further
emphasizes that Plaintiff's argument is pure speculation.

8

alleged debtor like Monarch, as opposed to attaching only those
funds specifically designated by the debtor for payment to the
creditor-defendant, in this case Grand Mirsinidi. Accordingly,
the Court finds that Plaintiff has not demonstrated that the
funds at issue are attachable as a debt.

Plaintiff's argument that Monarch is the alter ego of
Defendant also fails. This argument is unsubstantiated by any
allegations in the Complaint and was not asserted until oral
argument. Indeed, at oral argument the only evidence of an
alter ego relationship referenced by Plaintiff is the terms of
the Monarch/Grand Mirsinidi charter party, which Plaintiff
asserts suggest a close relationship between the two companies.
Plaintiff's statements, however, are insufficient to sustain the
attachment on alter ego grounds.

## ATTTORNEYS' FEES AND INTEREST

Monarch requests that the Court award it the legal fees it
has incurred in making the instant application for vacatur as
well as interest on the attached funds. While the traditional
"'American Rule' is that the prevailing party in federal court
litigation generally cannot recover attorneys' fees, . . . the

court does have the power to award attorneys' fees to a
successful litigant when his opponent has commenced or conducted

an action 'in bad faith, vexatiously, wantonly, or for
oppressive reasons.'" Dow Chem. Pac. Ltd. v. Rascator Maritime

9

S.A., 782 F.2d 329, 344 (2d Cir. 1986) (quoting F.D. Rich Co. v.

United States ex rel. Indus. Lumber Co., 417 U.S. 116, 129

(1974)).  Before a court may award such fees, there must be

"both 'clear evidence that the challenged actions are entirely

without color and [are taken] for reasons of harassment or delay

or for other improper purposes,' . . . and 'a high degree of

specificity in the factual findings of [the] lower courts.'"

Id. (quoting Weinberger v. Kendrick, 698 F.2d 61, 80 (2d Cir.

1982)).  In this case, the Court finds that an award of fees and

interest is not appropriate.  It is clear that Plaintiff

instructed HSBC Bank to restrain the funds at issue because of

the reference to the vessel the "Grand Mirsinidi" in the wire

transfer payment.  Because Plaintiff was aware that Defendant

Grand Mirsinidi is the owner of that vessel, Plaintiff had at

least some basis — even if not a substantial basis — for its

belief that Defendant had a property interest in the funds.

Accordingly, the Court finds that Plaintiff has not acted with

the requisite bad faith for an award of fees and interest.

## CONCULSION

For the reasons set forth above, Monarch's motion for

release of its attached funds is GRANTED.  Monarch's application

for fees and interest is DENIED.

10

SO ORDERED:

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE


Dated:     New York, New York
           June 15, 2009