UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
EMIRATES TRADING AGENCY LLC,          :
                                      :        09 Civ. 676 (BSJ)
                          Plaintiff,  :
                                      :        ECF CASE
      - against -                     :
                                      :
GRAND MIRISNIDI INC., STAMFORD        :
NAVIGATION INC., and MONARCH          :
MARITIME S.A. a.k.a. MONARCH I        :
MARITIME,                             :
                                      :
                          Defendants. :
-------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT
# OF MONARCH I MARITIME S.A.'S MOTION TO VACATE
# MARITIME ATTACHMENT AND/OR DISMISS COMPLAINT

*Of counsel:*

Patrick F. Lennon, Esq.
Nancy R. Siegel
LENNON, MURPHY & LENNON, LLC
The Gray Bar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
(212) 490-6050
(212) 490-6070 fax
pfl@lenmur.com
nrs@lenmur.com

## PRELIMINARY STATEMENT

Pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (hereafter "Supplemental Rule __") Defendant, Monarch I Maritime S.A. (hereinafter "Monarch") by its undersigned counsel, Lennon, Murphy & Lennon, LLC, submits the within Memorandum of Law in Support of its Motion to Vacate the Maritime Attachment dated June 19, 2009 obtained by Plaintiff, Emirates Trading Agency LLC (hereinafter "Plaintiff") and Dismiss the Complaint dated June 16, 2009.

Monarch moves to vacate the attachment (and dismiss the Complaint dated June 16, 2009) on the basis that it was present in the Southern District of New York at the time Plaintiff initiated this action against it by filing an Amended Complaint on June 16, 2009. The Amended Complaint filed on June 16, 2009 is the operative document with regards to Plaintiff's claim against Monarch since there is no hint of any claim against Monarch in the original Complaint dated January 23, 2009.

Further, Defendant Monarch moves to vacate the attachment on equitable grounds. That is, Plaintiff abused the attachment procedure by failing to notify and serve Monarch with the Amended Complaint, and provide copies of the proposed or executed copies of the Amended Order of Attachment despite the fact that Monarch had made a limited appearance through counsel at a hearing in this matter on June 2, 2009 and that Monarch's property remained restrained in New York pursuant to the instant action.

Based on the accompanying Declaration of Nancy R. Siegel and for the reasons set forth herein, the Ex Parte Order and the Process of Maritime Attachment dated June 19, 2009 should be vacated and all of Monarch's attached funds released.

Under Supplemental Rule E(4)(f), "whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Here, Plaintiff cannot met its burden of showing that Monarch was not present in the District at the time the Amended Complaint was filed against it as by Plaintiff's own admission, Monarch had previously registered to do business with the New York Department of Corporations and appointed an agent for service of process in the Southern District of New York.

Furthermore, given Plaintiff's blatant abuse of the attachment procedure discussed in more detail at Point V *infra*, the Court should exercise its equitable discretion to vacate the Ex-Parte Order of Attachment issued against Defendant Monarch and dismiss the instant case as against it.

## FACTS

Plaintiff filed a Complaint against the Defendant, Grand Mirsinidi Inc. ("Grand Mirsinidi"), on or about January 23, 2009. It is indisputable that Grand Mirsinidi was the <u>sole</u> Defendant named in the Complaint. Plaintiff submitted an affidavit in support thereof attesting that the only Defendant named in the action, Grand Mirsinidi, could not be found in the District. This affidavit was entered on the docket on January 28, 2009. Based on the affidavit, the Court issued an Ex Parte Order for the Process of Maritime Attachment against Grand Mirsinidi on January 26, 2009. There is no mention of Monarch in the Plaintiff's initial pleadings or any hint or suggestion that Plaintiff intended to pursue its claim against any party other than Grand Mirsinidi, its contractual counterparty.

Pursuant to the Ex Parte Order and accompanying Process of Maritime Attachment and Garnishment issued against Grand Mirsinidi dated January 26, 2009, Plaintiff wrongfully

2

attached Monarch's funds on or about May 20, 2009 in the approximate amount of

$2,405,196.49. Monarch requested that the funds be released. *See accompanying Declaration of*

*Nancy R. Siegel ("Siegel Decl."), ¶4.* Plaintiff refused although it could provide no basis for

attaching the funds in question. Only after Monarch challenged the attachment of its funds did

Plaintiff claim that Grand Mirsinidi had a property interest in them by virtue of a lien. *Siegel*

*Decl., ¶5.* Plaintiff could provide no proof of the existence of the lien, and thus the attachment

was properly vacated on June 15, 2009. Plaintiff indicated at the hearing on June 2, 2009 that

was considering adding Monarch as an alter-ego to the action. *Siegel Decl., ¶8.* Monarch, <u>who</u>

<u>had appeared at the hearing through undersigned counsel,</u> objected and stated that it was

registered to do business in New York and thus, present in the District for Rule B purposes and

therefore immune from Rule B attachment. *Siegel Decl., ¶9.*

Despite its clear knowledge that Monarch was registered to do business in New York and

thus immune from Rule B attachment, Plaintiff nevertheless filed an Amended Complaint on

June 16, 2009, adding Monarch and Stamford as Defendants for the first time, and requesting

that an Amended Ex Parte Order for Process of Maritime Attachment and Garnishment issue

against Grand Mirsinidi, Monarch and Stamford. As admitted in Plaintiff's counsel's Rule B

affidavit, both Monarch and Stamford were registered with the New York State Department of

Corporations well before June 16, 2009. Thus, it is indisputable that Monarch, as well as

Stamford, were "present" in the District prior to the time Plaintiff filed this action against them

by the allegations set forth in the *Amended* Complaint.

Neither Monarch nor Monarch's counsel were served with copies of the Amended

Complaint or with copies of the proposed Amended Ex Parte Order despite the fact that

Monarch's funds were still attached in New York and that Monarch appeared through counsel at

the hearing on June 2, 2009. *Siegel Decl., ¶11.* Monarch's undersigned counsel was in communication with Plaintiff's counsel after the June 2nd hearing in relation to this matter. *Siegel Decl., ¶12.* In fact, Monarch's undersigned counsel requested from Plaintiff's counsel on June 12, 2009 copies of the Ex Parte Orders and Writs issued in this matter. When responding on June 17, 2009, *after* the Amended Complaint was filed, Plaintiff's counsel provided copies of the Ex Parte Order and Writs issued against Grand Mirsinidi only and failed to provide copies of the Amended Complaint or the draft Amended Ex Parte Order submitted to this Court. *Siegel Decl., ¶¶ 13-14.*

The Amended Complaint was not available for review on the docket or in Court records as late as June 23, 2009. *Siegel Decl., ¶15.* Thus, Plaintiff, armed with the knowledge that Monarch was present in the District and actively represented by undersigned counsel in relation to this specific action, proceeded furtively by obtaining a truly secret attachment without serving Monarch or its counsel with copies of the Amended Complaint and draft Amended Ex Parte Order. Plaintiff's actions were improper and an abuse of the Rule B remedy, which further compounds its prior abuse of the remedy when it improperly and wrongfully attached Monarch's funds on May 20, 2009

As shown by the facts above, there are several troubling issues surrounding Plaintiff's Amended Complaint and the issuance of the Amended Order. Not only has Plaintiff manufactured Monarch and Stamford's "lack of presence" by submitting to this Court that the controlling date for determining Monarch's "presence" for Rule B purposes is the date the original Complaint was filed when clearly the controlling date is the date of the original filing against Monarch, i.e. June 16 when Plaintiff filed the Amended Complaint, but it also failed to serve Monarch or its undersigned counsel with a copy of the amended pleadings at the time they

4

were filed with the clear purpose of precluding Monarch from any opportunity to object to

Plaintiff's malicious actions. As a result of Plaintiff's wrongful conduct, Monarch's $2.4 million

that was ordered released pursuant to the Court's Order dated June 15, 2009 has now been re-

attached and Plaintiff indicates that additional funds of Monarch in the amount of $196,981.33

have also been attached pursuant to the Amended Ex Parte Order. *Siegel Decl.,* ¶*16.*

## ARGUMENT

### POINT I

### A HEARING ON THIS APPLICATION SHOULD BE HELD WITHIN THREE (3) COURT DAYS

In order to ensure the constitutionality of the attachment mechanism provided for under

Rule B, Supplemental Admiralty Rule E(4)(f) and Local Admiralty Rule E.1 provide for a

prompt adversary hearing following any attachment. Rule E(4)(f) provides that whenever

property is attached any person claiming an interest in it shall be entitled to a prompt post-

attachment hearing where the plaintiff is required to show cause why the attachment should not

be vacated or other relief granted consistent with the Supplemental Rules. In this regard, the

Local Rule, entitled Adversary Hearing Following Arrest, Attachment or Garnishment, specifies:

> The adversary hearing following arrest or attachment of garnishment that is called
> for in supplemental Rule E(4)(f) shall be conducted within three (3) court days,
> unless otherwise ordered.

S.D.N.Y. Local Rule E.1.

In this case, the need for a prompt hearing is even more pronounced as Plaintiff has

wrongfully attached Monarch's funds <u>for over a month by virtue of consecutive baseless</u>

<u>attachments.</u> This Court has already vacated the attachment over Monarch's funds on June 15,

2009. Plaintiff then filed its Amended Complaint to wrongfully add two <u>registered</u> Defendants.

Plaintiff is clearly abusing the system to delay the release of Monarch's funds without regard to

the propriety of its actions. Plaintiff's attachment of Monarch's funds was wrongful in the first

place. Now, Plaintiff has compounded its first wrongful attachment by manufacturing new,

albeit improper, reasons to attach the very same funds. Based on the foregoing, Monarch

respectfully requests that the Court conduct a post-attachment hearing within three court days (or

sooner) from the date these papers are submitted to the Court.

**POINT II**

**IT IS PLAINTIFF'S BURDEN TO PROVE**
**WHY THE ATTACHMENT SHOULD NOT BE VACATED**

A Plaintiff that has obtained and an ex parte Rule B attachment order shoulders the

burden at the post-attachment hearing to prove *inter alia* that "it has a valid prima facie admiralty

claim against the defendant." *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d

434, 445 (2d Cir. 2006). Supplemental Admiralty Rule E(4)(f) of the Federal Rules of Civil

Procedure provides:

> Whenever property is arrested or attached, any person claiming an interest in it
> shall be entitled to a prompt hearing at which the plaintiff shall be required to
> show why the arrest or attachment should not be vacated or other relief granted
> consistent with these rules.

It is the plaintiff's burden to prove that the attachment is proper. The Second Circuit

Court of Appeals commented on Rule E(4)(f) in *Aqua Stoli* and established the following

standard:

> [A] district court must vacate an attachment if the plaintiff fails to sustain his
> burden of showing that he has satisfied the requirements of Rules B and E. We
> also believe vacatur is appropriate in other limited circumstances. While, as we
> have noted, the exact scope of a district court's vacatur power is not before us, we
> believe that a district court may vacate the attachment if the defendant shows at
> the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent
> jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the
> defendant in the district where the plaintiff is located; or 3) the plaintiff has
> already obtained sufficient security for the potential judgment, by attachment or
> otherwise. n5.

6

> n.5 Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rule B and E. Although Rule E does not explicitly mention a district court's equitable power to vacate an attachment or who bears such a burden, former Local Rule 12 required the defendant to establish any equitable grounds for vacatur, and we believe that defendants still bear that burden under the Supplemental Rules.

*Aqua Stoli*, 460 F.3d at 445.

At the Rule E(4)(f) hearing, a defendant or a party claiming an interest in the attached property may challenge "the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." *Aqua Stoli*, 384 F. Supp. 2d. at 728 (quoting Supp. R. Fed. Civ. P. advisory committee's notes). To satisfy the requirement of Rule B, the Plaintiff has the burden to show that: (a) it has a prima facie valid maritime claim; (b) the named defendant cannot be found within the district; (c) the named defendant's property was within the district; and (d) no other statutory or maritime law bar to the attachment. *Aqua Stoli*, 460 F. 3d at 445.

For the reasons set forth below, Plaintiff is unable to carry its burden because it cannot show that Monarch was "not present within the District" when the Amended Complaint was filed against it.

## POINT III

## REGISTRATION WITH THE NEW YORK STATE DEPARTMENT OF CORPORATIONS SATISFIES THE "PRESENCE" TEST FOR RULE B PURPOSES

A Rule B attachment cannot be sustained unless the plaintiff carries its burden of showing that the defendant cannot be "found within the district." Fed. R. Civ. P. Supp. R. B. "No matter how convincingly demonstrated the plaintiff's need for security, it will not authorize attachment against a defendant who is present in the district. . ." *Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd.*, 476 F. Supp. 119, 122, (S.D.N.Y. 1979).

"[A] defendant's registration under New York Business Corporation Law § 1304 is sufficient to satisfy both prongs of the Seawind Test and, therefore, a company registered with the Department of State is 'found' for purposes of Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions." *STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.,* 560 F.3d 127, 133 (2d Cir. N.Y. 2009). A "[c]ourt should look to the day **the complaint against the defendants was filed** to determine whether this requirement was satisfied." *See Glory Wealth Shipping Pte Ltd. v. Industrial Carriers, Inc.,* 08 Civ. 8425 (RJH), 590 F. Supp. 2d 562, 564 (S.D.N.Y. Dec. 16, 2008)(emphasis added).

The date that the Amended Complaint was filed against the Defendants Monarch and Stamford was June 16, 2009. Monarch and Stamford were registered with the New York State Department of Corporations, and thus present for Rule B purposes, on May 28, 2009 and March 10, 2009 respectively. Thus, the attachment issued against Monarch and Stamford must fail as Plaintiff cannot establish that they could not be found in the District at the time the Amended Complaint was filed against them. Plaintiff obfuscated this fact in its affidavit by indicating that the Court should look to the date the original Complaint was filed against Grand Mirsinidi. This argument is illogical and without merit for the obvious reason that insofar as Monarch and Stamford are concerned, the controlling date is the date the Plaintiff first asserted claims against them, *i.e.* June 16, 2009 – the date the Amended Complaint was filed. There is no authority whatsoever to support Plaintiff's illogical position and it has failed to cite any in the ex parte papers it presented to the Court.

**POINT IV**

**THE COURT SHOULD EXAMINE STAMFORD'S AND MONARCH'S**
**PRESENCE AS OF THE DATE THE AMENDED COMPLAINT WAS FILED**

Plaintiff's argument that the Court should look to the date the original Complaint was

filed to determine the presence of Monarch and Stamford, who were not added to the action until

the filing of the Amended Complaint, is entirely illogical and ignores the plain wording of

Supplemental Rule B.

Rule B provides that:

> If a defendant is not found within the district when a verified complaint praying for
> attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may
> contain a prayer for process to attach the defendant's tangible or intangible personal
> property--up to the amount sued for--in the hands of garnishees named in the process.

Fed. R. Civ. P. Supp. R. B.

The only logical interpretation of the quoted language is that if a defendant named in the

verified complaint cannot be found in the district at the time the original complaint is filed

against it, then the complaint (which names that defendant) may include a prayer for process of

attachment against that specific defendant.  It does not follow that the date of the original filing

should be applied to parties joined in the action months later by the filing of an amended

complaint where they are named as defendants for the first time.  Plaintiff's skewed

interpretation otherwise is wholly without support and should be rejected.

*T&O Shipping, Ltd. v. Source Link Co.,* 2006 U.S. Dist. LEXIS 88153, 13-14 (S.D.N.Y.

2006) confirms the principle that a complaint (and the attachment incident thereto) is only

binding against the party named in that complaint. *T&O Shipping* states that "Rule B limits the

scope of an attachment to a defendant who is named in a verified complaint."  If the Plaintiff

wants to add a new defendant to the action (and obtain an attachment against that new defendant)

9

it must submit a new affidavit attesting that the new defendants cannot be found in the District at the time the <u>pleading asserting claims against the new defendants</u> was filed. If a plaintiff does not name a party as a defendant in the original complaint, it cannot include that party in the prayer for attachment.

> Plaintiff's failure to name Source Link Shipping as a defendant in this action means that Plaintiff cannot make a prima facie showing that it properly alleged a maritime claim against Source Link Shipping when the Attachment was issued. See DS Bulk, 2006 U.S. Dist. LEXIS 39242, 2006 WL 1643110, at *2 (vacating attachment of non-party defendant). In addition, because Source Link Shipping was not named in the Verified Complaint, Plaintiff did not aver, as required by Rule B, that Source Link Shipping could not be "found within the [*14] district." Id. Thus, the Attachment must be vacated for failure to comply with the requirements of Rule B

*See id.* To hold otherwise, would violate notions of due process. Therefore, as Monarch could be (and in fact was) found in the District at the time Amended Complaint was filed against it, the conditions for issuance of a Rule B attachment order did not exist and therefore the attachment against Monarch must be vacated.

## POINT V

## THE ATTACHMENT SHOULD BE VACATED <br> BECAUSE PLAINTIFF ABUSED THE ATTACHMENT REMEDY

Plaintiff abused the attachment process in at least two ways: first, by pursuing an attachment order against Monarch despite its clear, and admitted, knowledge that Monarch was registered to do business in New York and thus immune from Rule B attachment; and, second, by applying for an attachment order against Monarch on an ex parte basis, despite the fact that Monarch had appeared by its undersigned counsel in this very action and participated in a hearing on June 2, 2009 with regard to Plaintiff's original, wrongful attachment of its funds.

The Amended Complaint was not available for review on the docket or in Court records as

10

late as June 23, 2009. Thus, as set forth above, Plaintiff, armed with the knowledge that Monarch was present in the District and actively represented by undersigned counsel in relation to this specific action, proceeded furtively by obtaining a truly secret attachment without serving Monarch or its counsel with copies of the Amended Complaint and draft Amended Ex Parte Order. Plaintiff's actions were improper and an abuse of the Rule B remedy, which further compounds its prior abuse of the remedy when it improperly and wrongfully attached Monarch's funds on May 20, 2009

Where a plaintiff has abused the attachment process, vacatur is appropriate on equitable grounds. *See Chiquita Int'l Ltd. v. M/V Bosse,* 518 F. Supp. 2d 589, 599-600 (S.D.N.Y. 2007). The due process rights of defendants are already severely circumscribed in the context of an ex parte attachment. Thus, violations of procedure are all the more grievous since the defendant does not have the opportunity to be heard prior to the issuance of the attachment order.

The Affidavit presented by Plaintiff's counsel ex parte to this Court failed to disclose critical information regarding Monarch. Plaintiff is required to list all of the prospective defendant's contacts with the District, including any pending action where it may have obtained jurisdiction already.

It is universally accepted by the courts and, in fact, a due process requirement under Rule B, that before the district court may issue an ex parte order authorizing process of maritime attachment and garnishment, the plaintiff's counsel must submit an affidavit setting forth its efforts to determine the defendant's presence in the district. Supplemental Rule B states, specifically, as follows:

> The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter

11

an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Supplemental Rule B. Local Rule B.1 goes further, imposing the following requirement:

> The affidavit required by Supplemental Rule B(1) to accompany the complaint, and the affidavit required by Supplemental Rule B(2)(c), shall list the efforts made by and on behalf of the plaintiff to find and serve the defendant within the district.

Loc. Adm. R. B.1. A review of the Affidavit submitted by Plaintiff's counsel to this Court highlights the violation of Monarch's due process rights.

In *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 268 (2d Cir. 2002), the Second Circuit discussed the importance of the minimal due process rights of defendants under Rule B:

> Notwithstanding the unanimity of the post-*Shaffer* appellate decisions upholding the constitutionality of Admiralty Rule B, the drafters of the rules amended Rule B(1) in 1985 in order to address any possible due process concerns. While the practice of granting maritime attachments on an *ex parte* basis remains, Rule B(1) now requires the plaintiff to appear before a judge to procure an attachment. *See* Rule B(1)(b) ("The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment."). The Advisory Committee Notes to the 1985 amendments explain their purpose:
>
>> Rule B(1) has been amended to provide for judicial scrutiny before the issuance of any attachment or garnishment process. Its purpose is to eliminate doubts as to whether the Rule is consistent with the principles of procedural due process enunciated by the Supreme Court (citing cases).

*Winter Storm*, 310 F.3d at 271-272. Plaintiff's misrepresentations of fact deprived Monarch of its minimal due process rights. As Judge Sullivan discussed in *Centauri Shipping Ltd. v. Western Bulk Carriers, KS*, 528 F. Supp. 2d 197 (S.D.N.Y. 2007):

> the Court notes that Counsel's conduct is of particular concern where, as here, Counsel appeared "before a Judge seeking extraordinary relief *ex parte* . . . ." *Four Star Fin. Servs., L.L.C. v. Commonwealth Mgmt. Assocs.*, 166 F. Supp. 2d 805, 810 (S.D.N.Y. 2001) (Martin, J.). Like Judge Martin, this Court emphasizes the fact that "[a]ttorneys are officers of the Court, and our system of justice cannot operate efficiently" if the Court is unable to rely on counsel in an *ex parte*

proceeding to work diligently to ensure the accuracy of his representations to the Court. *See id.*

*Centauri Shipping*, 528 F.Supp.2d at 201. Judge Sullivan declined to sanction the plaintiff's

lawyer, who had submitted a false Rule B affidavit, but aptly concluded:

> Rule B is a powerful and in some ways unprecedented tool available to plaintiffs in maritime actions. There are good reasons for it. But[] it is premised on the assurance that plaintiffs and their counsel will act with care and candor in *ex parte* proceedings with the court. That clearly did not happen here.

*Id.* at 203.

The situation in this case with the Attorney Affidavit submitted to the Court ex parte is no

different. The Plaintiff's Attorney Affidavit in this case, although admitting that Monarch was

registered to do business in New York, failed to identify the fact that Plaintiff's counsel was in

communication with Monarch's undersigned counsel regarding this very matter. In addition,

Plaintiff's Attorney Affidavit does not identify any other efforts made to determine Monarch's

presence and amenability to service at any time other than June 16, 2009, further underscoring

the disingenuous nature of Plaintiff's contention in the same Attorney Affidavit that the

controlling date for determining a defendant's presence for Rule B purposes is the date the

original complaint was filed. If that were, in fact, the standard (which as explained in Point IV,

*supra*, is incorrect) then Plaintiff would have the burden of submitting an attorney affidavit to the

court explaining the efforts made to find and serve Monarch on or before January 23, 2009 when

Plaintiff filed the original Complaint. However, Plaintiff cannot carry its burden in this regard

because it cannot turn back the hands of time in order to carry out a diligent search for

Monarch's presence in the District at that time. Thus, the conclusory allegations contained in

Plaintiff's Attorney Affidavit are wholly insufficient to carry its burden of proving Monarch

cannot be found within the District and is, effectively, the equivalent of having done no search at

all and nevertheless asking the Court to issue an ex parte attachment order nonetheless.

Permitting such abusive conduct is the equivalent of stripping Rule B of the minimal due process

protections afforded to a defendant who otherwise has no opportunity to be heard prior to

issuance of the attachment order. Plaintiffs should not be able to "manufacture" the conditions

required for Rule B attachment in this matter. See, e.g., *Crystal Waters Shipping Ltd. v.*

*Sinotrans Ltd. Project Transp. Branch*, 2009 U.S. Dist. LEXIS 41655 (S.D.N.Y. May 5, 2009)

(denying a motion to re-open and finding that now that Defendant had registered to do business

in New York thus "there is no justification for an ex parte order to seize [Defendant's] property--

let alone justification to resurrect a dismissed action with new claims").

Plaintiff's failure to serve Monarch or its undersigned counsel with a copy of the

Amended Complaint, Amended Attorney Affidavit and draft Amended Ex Parte Order by itself

also constituted abusive conduct that serves as an independent basis for vacatur of the

attachment. Although Monarch's undersigned counsel did not enter a "formal" appearance on

the docket, there is no doubt that Monarch's counsel appeared before the Court regarding this

matter and was entitled to be served with any other pleadings filed in this action, at least insofar

as they concerned Monarch.

In *Gould v. Financialweb.com, Inc.*, 2000 U.S. Dist. LEXIS 20917 (S.D.N.Y. 2000), in

the context of a default judgment application under Federal Rule of Civil Procedure 55(b)(2),

Magistrate Judge Eaton reasoned as follows:

> Construing the phrase "appeared in the action," courts have found that it applies
> in many situations where the defendant has not made a formal appearance. *See,*
> *e.g., Lutomski v. Panther Valley Coin Exchange*, 653 F.2d 270 (6th Cir. 1981);
> *Martha Stewart Living Omnimedia v. Beers Flower Shop*, 1998 U.S. Dist. LEXIS
> 14738, 1998 WL 646648 at *3 (S.D.N.Y. 1998)(Sweet, J.); *Sexton v. M.V. Silver*
> *Happiness*, 1997 U.S. Dist. LEXIS 14634, 1997 WL 642348 at *4 (E.D.N.Y.
> 1997)(Glasser, J.). The common thread seems to be that if a party has expressed --
> explicitly or implicitly -- an intent to defend (rather than an intent to ignore the

14

lawsuit and default as a litigation strategy), then equity compels the plaintiff to give the defendant notice of a motion for a default judgment. In a leading case, *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 139 U.S. App. D.C. 256, 432 F.2d 689 (D.C. Cir. 1970), reversing a denial of a motion to vacate, the court noted that there was no indication that the defendant would not have proceeded diligently had the plaintiff given notice that it was no longer interested in settlement talks.

*Id.* at *12-13. By analogy, here – given the extraordinary nature of a Rule B attachment and the fact that Monarch's counsel had already appeared before the Court in this very action, equity likewise should have compelled Plaintiff to serve notice of its Amended Complaint, Amended Affidavit and draft Amended Ex Parte Order on Monarch's undersigned counsel. By failing to do so, Plaintiff acted abusively and unilaterally, and wrongfully, deprived Monarch of the right to object to Plaintiff's request for an attachment order against Monarch to which it was clearly not entitled (see Points III and IV, *supra*).

Accordingly, because Rule B attachment is an equitable remedy, and Plaintiff has acted most inequitably in violating Monarch's due process rights and otherwise not following proper procedure, the attachment should be vacated and the Verified Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should vacate the attachment against Monarch, direct all garnishee banks to release the attached funds of Monarch, and instruct the Plaintiff to modify the Ex-Parte Order such that no further property of Monarch will be attached in the future. In the alternative, this Court should vacate the attachment on equitable grounds and dismiss the case for lack of jurisdiction.

Dated: June 25, 2009
      Southport, CT

Defendant,
MONARCH I MARITIME S.A.

By: _____

Patrick F. Lennon
Nancy R. Siegel
LENNON MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 (phone)
(212) 490-6070 (fax)
pfl@lenmur.com
nrs@lenmur.com

16